Case 23-3404, Western District of Missouri, Deidre Parker v. United States et al. All right, good morning, Ms. Randles. You may proceed when you're ready. Good morning, Your Honors. May it please the Court. I represent Deidre Parker, a federal employee with over 25 years of experience who worked for the USDA RMA. She worked for USDA RMA for approximately eight years, and she brought this action because she was discriminated against and harassed based on her sex and race, and she suffered retaliation following her two prior complaints of discrimination, the last of which settled in 2015. The District Court erred in determining the plaintiff suffered no substantial adverse action under the disparate treatment and harassment claims. They also erred in determining that her remaining claims lacked support and that those actions were based on sex or race. We believe that we have submitted prima facie cases on each of those claims. The District Court erred because there has been a recent Supreme Court opinion, the Muldrow v. St. Louis case, that has changed the standards under which race discrimination, disparate treatment, and harassment are now analyzed. This case should be reversed and remanded to the trial court because of that precedent in Muldrow v. City of St. Louis. The trial court dismissed plaintiff's claims of disparate treatment, harassment, and retaliation on the basis that the plaintiff could not establish that she suffered adverse job actions for any of her claims, and that her constructive discharge claim failed on the evidence. We believe she has made a prima facie case on all of these claims. Since that ruling, the Supreme Court has clarified the meaning of adverse job action. The prior Eighth Circuit... One clarification. I believe we're on de novo review here, right? Yes. So can't we on appeal apply the correct standard from Muldrow? Yes, we can apply the correct standard.  The case should be reversed and remanded because of the change in the law concerning Muldrow. And the correct standard at this point, then... The prior Eighth Circuit standard was that alterations in employment had to be severe and substantial, akin to demotion, loss of pay, benefits, or termination. While Kim v. Nash Finch decided that actual termination or loss of pay was not necessary, even that case established a high bar to recovery for discrimination requiring substantial harm. Muldrow explains that textually, nothing in Title VII requires this high burden. Rather, a plaintiff must show that an adverse job action has changed her terms and conditions of employment to her detriment. In this case, plaintiff has shown exactly that. Deidre Parker, when she was hired, was supposed to be the right hand of the division director for RMA... Well, let's not get right there first. I just still want to look at what Muldrow has done, what it has not done. And I'm wondering is that it's got to be your argument that it undermines all of our precedent that says mere written warnings that result in no further action are not an adverse employment action. And my question about that is that how was that undermined by the most recent Supreme Court case? I mean, I like your legal argument as to why, you know, because it's really not apparent to me on its face that it is. And so I must be just kind of dense because you're assuming that it's apparent. And I want to know how it undermines that. Because if you look at it, you know, we warn people all the time that we don't like their work. I mean, people show up and I say, Dad, I don't like your bench memo. We need to work on this. We need to work on that. And I don't see that as an adverse employment action as much as I see it as a training opportunity. And so I'd like to know, is it the fact that it's in writing that makes it different? Or is there something in these particular writings and the nature of them that makes it look more like a disciplinary thing? Well, in this instance, we weren't relying so much on the letters of counseling because there has been a whole lot of case law concerning whether or not letters of counseling have any predictive impact on a person's job and career. Defense counsel was relying on letters of counseling because there has been so much precedent concerning that issue. Our concern is really that from the very instant that Ron Mundine became her supervisor, which was immediately following the settlement of the discrimination complaint, he took her out of all of her job duties. Her most important job duty was to go to the meetings where the entire division was present and at those meetings she would be responsible for helping with the logistical side, the administrative side, for helping with providing support to research for and training to the individuals that were in these meetings. Immediately upon her settlement of that discrimination complaint, she was taken out of that position and the only job duties she had after that was typing and filing. And then when employees began doing their own typing, filing and their hours, she had no job duties, none. So she was walking from building to building from supervisor to supervisor asking them, can you please give me work? That was the start of each of these disparate acts that occurred. And so the letter of counseling came way down the line after she'd already had all of her job duties taken away from her, after she was already asked to take a position that was lower than the position that she was in, when she was denied the training opportunities, when she was denied the ability to search for jobs and that she was denied details. When all of that occurred, then they started the letter of counseling and the first letter of counseling occurred over the Beacon Cafe incident. And the Beacon Cafe incident was a highly significant incident because there's evidence in the record that establishes that they knew the woman who complained about Deidre Parker, in fact, complained about any employee who made a complaint about the Beacon Cafe. And so they knew she was a retaliatory employee or retaliatory person. Nonetheless, they required Deidre to stay away from the cafe for 90 days. But the basis on which they did it was also discriminatory. Because the basis on which they did it was because this woman claimed that she had stolen from the cafe, something that was never investigated and was utterly untrue. And the other individuals who were there said, no, that never happened. And so the letters of counseling became one more thing. It was another thing after all of these other events had occurred that was discriminatory. So your claim essentially is the evidence, if you're allowed the opportunity to present it, will show that those letters are false flag incidents that were retaliatory in an attempt to cover up what was really an intent to drive her from the workplace. Absolutely. That is absolutely what the issue is with regard to those letters of counseling. So we believe that when you look at the evidence and you compare it to the new standard, under the disparate treatment and the harassment claim, we absolutely make that standard. With regard to the constructive discharge claim and the retaliation claim, we also believe that those have, we've made the prima facie case and we've fully briefed those. I'm going to reserve the rest of my time for rebuttal. All right, counsel, you may proceed when you're ready. Good morning. May it please the court, my name is Jeff Ray. I'm the Civil Chief in the Western District of Missouri. I represent Thomas Vilsack in his official capacity as the Secretary of Agriculture today. As the court is well aware, this case arises from claims of sex discrimination, race discrimination, and retaliation raised by a former employee of the USDA, Ms. Parker. I believe our brief addresses the primary issues sufficiently, so I kind of want to focus on the two arguments made by Ms. Randles today. With respect to the Muldrell case, I do believe it did change the standard to some extent for showing a tangible harm with respect to an involuntary transfer. That's what the case involved, and as this court is well aware for many years, the holdings have been that a transfer initiated by an employer of an employee who was not requesting a transfer was not an adverse employment action if there was no change in pay, benefits, and other aspects of the employment. When I read the Muldrell case to say is that's too simplistic when an employer steps in and makes an involuntary transfer. That the test should be not whether or not there's been some significant tangible change, but whether or not there's been some harm, and that makes sense because this is an involuntary action being foisted upon an employee, and certainly many employees would argue a change to a different location, to a different shift, to a different supervisor has the possibility of creating some harm. It still requires proof of that harm. It's not enough to say that there is a conceptual possibility of some harm. There's still the obligation on the plaintiff to show, in fact, that there is some harm. We believe that that does not change the overall standard for the definition of an adverse employment action across the board in all Title VII actions involving actions undertaken by an employer. In this case, there simply is no evidence that with respect to the action that really raised this issue in this case, which was Ms. Parker's request that she be transferred, in other words, not an involuntary transfer by the USDA, but she wanted a different job, and the employer in this case, the RMA, either could not or would not allow her to transfer to a different position. That is not the same as involuntarily transferring an employee to a different position where there at least is an implicit, if not an explicit, belief that there may be some harm arising to the employee. What about her argument that her job changed in such a fashion that that was an adverse employment action, that she was moved from a place of meaningful work to a place of not meaningful work, and ultimately to a place, apparently, of no work, where you just wander around a building aimlessly asking folks for something to do? With all due respect to Ms. Randles, I would urge the court to review the record. The description that Ms. Randles gives of what happened after the 2015 settlement of the EEO complaint, I believe, is at odds with the objective evidence that's in the record. Ms. Parker was hired as clerical help for this entire group. It was not hired as a personal assistant to Mr. Lundine. It was her job to provide clerical help across the board. The USDA, as many employers do with respect to clerical help, are moving towards a position where a lot of times that work does start to dry up. Employees do their own time sheets. They do their own travel planning. They do their own word processing. That's what happened here. USDA took no steps to fire Ms. Parker. They took no steps to eliminate her job. Instead, they tried to find work. There were opportunities for her to do details, some of which she accepted, some of which she did not. But once again, a changing workplace, in and of itself, cannot be an adverse employment action. By that same token, I believe, and the court has already, I think, touched upon this, it is part and parcel of the workplace to communicate to employees as to the work they're doing, whether it's acceptable, unacceptable, whether their conduct is acceptable or is unacceptable. Just because an employee comes away from that feeling some subjective harm to their own feelings about having been told that by their employer, that cannot arise to the level of an adverse employment action. To do so would completely undermine the ability of an employer to manage a workforce, to complete tasks, and to address issues that can be addressed informally and therefore corrected. In this case, we believe that the evidence, to the extent there was objective evidence, supports a finding that there was no harm to Ms. Parker, and that if there's an argument that she had some harm, that harm is purely subjective on her part and that she didn't want to be criticized. She did want to be given preferential treatment. Those are all things that any employer, whether they're a government agency or a private industry, has to take into account in managing employees. And it can't be the fact that every time an employee feels subjectively they've sustained some harm from an action, that that in and of itself is sufficient to create an adverse employment action. In this case, even setting that aside, the district court clearly found that notwithstanding an adverse employment action, there was no evidence in this record, no evidence in this record that any of these actions about which Ms. Parker complains had any sort of a nexus to her race, to her gender, or to the fact she'd had a prior EEO complaint. We believe that there was no prima facie case made with respect to either of those three actions, and even if there was, there certainly was no evidence that would create a jury issue with respect to pretext. With respect to a hostile work environment, this case once again falls squarely within this court's prior precedence. There's no evidence, again, that the actions that were being alleged to be a hostile work environment were being undertaken because of any protected grounds. And even if there is, the limited incidents brought forth by Ms. Parker simply do not rise to the level of hostility that this court has required with the understanding that, as is often said, Title VII is not and cannot be a code of civility. To do so would invite unlimited litigation and undermine the ability of any employer, government agency or not, to manage their workforce and to complete work tasks. Mr. Ray, I've got a question for you about the retaliation claim specifically. Assuming, for the sake of my question, that there was adverse employment action, if you look at the totality of the accusations, the denials of training, transfer, reduced work, exclusion from meetings, is there any evidence in the record to show a legitimate, non-discriminatory reason for those actions? I believe we addressed that in our summary judgment motion, and our answer would be no. There is no evidence that would support that any of those actions were undertaken sufficient to create a question of intent. I mean, this kind of goes to the overall, I think, tenor of the district court's opinion, which was absolutely correct, I believe, that really this was a case about anecdotal evidence and subjective feelings. I do not dispute that Ms. Parker subjectively felt that she wasn't getting a fair shake at USDA, and she certainly had all sorts of claims of vague anecdotal evidence that employees like her did not have the same advantages, but you needed specificity. This is not, as I said, a general civility code. There needed to be evidence that showed that other employees who were similarly situated got preferential treatment. She talks about training, but doesn't identify the training she missed out on, and certainly doesn't show why it is that that training was offered to someone else who did not share her characteristics. We believe that all the actions we took, to the extent that there was a detailed explanation of exactly what it was Ms. Parker was claiming, were justified by neutral, non-discriminatory, non-retaliatory reasons, starting out with the fact that employees did their own timesheets. Work fell off. She wanted a transfer. In some cases, that was available. In some cases, it would have violated the, not a collective bargaining agreement, but essentially the employment rules of the agency. We believe everything that we did, we did for valid reasons that were not in violation of Title VII. I see my time is up, and unless the court has any questions, I would just say that on behalf of the Secretary of Agriculture, we would respectfully request that you affirm the judgment entered below by the district court. Thank you. Thank you, counsel. Ms. Randles, you have a minute, 1 minute and 47 seconds. Thank you, your honor. I'd like to address three things very quickly. The first is that the Moldero standard, it changed the standard for all actions, not just the transfer action, because Moldero relies specifically on the text of the Title VII, and so by referring to the text, it says you cannot include another standard that's not found within the text. That would apply to every type of action that would cause some form of harm. The second thing is that he talks about this being a subjective harm and not an adverse job action, and that she was complaining, again, he goes back to the counseling that we talked about earlier. The thing is, she always had outstanding reviews. Her performance was never at issue. The one time that she did file a, her prior EEO complaint concerned one of the upper level managers reversing her outstanding review and giving her fully successful when there was no basis in fact for changing it from outstanding to fully successful. Her supervisor had given her the outstanding review. So there's never been an issue with regard to her ability to perform the work. Then he also indicated that there was no evidence that the actions had any connection to race, gender, or retaliation, and that simply isn't true. The record is replete with information concerning the race discrimination that she suffered. We went from general to specific. In general, the environment was very racist. There were lots of racial epithets. There were racial emails that were sent around before, during, and after the time that she was in this position, and they were by the individuals who were in positions of power or supervisors over her. So we have the general. Are those things prior to the 2000, I forget what year, but prior to the previous settlement, are they even before us, and can we consider them, or were they all resolved in your client's prior claim? Well, there was no resolution of that. Her only prior claim concerned the going from her outstanding review to a meets fully successful review. It was never raised. The question is what was the environment, and the case law is fairly clear that you can look at evidence that shows the environment in which the events took place, and this environment was rife with racial tension and with racial epithets. Thank you. All right. Thank you.  Counsel, thank you for your arguments this morning. The case is submitted, and the court will render a decision as soon as possible.